UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PONCIANO AUSTRIA,  )
            Petitioner,  )
v.  )  CASE NO.  C02-2196-FDB-MAT
TOM RIDGE, *et al.*,[1]  )  REPORT AND
            Respondents.  )  RECOMMENDATION
_____)

**INTRODUCTION**

Petitioner is a native and citizen of the Philippines. On October 24, 2002, he filed, through counsel, a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Dkt. #1). Petitioner alleges that the Immigration Judge ("IJ") erred in finding him removable for having been convicted of an aggravated felony and therefore ineligible for a waiver under section 212(c), or for other relief from deportation under the Immigration and Nationality Act ("INA"). Petitioner also alleges that the former Immigration and Naturalization Service's ("INS") refusal to adjudicate his application for

---

[1] Pursuant to the Homeland Security Act of 2002, 116 Stat. 2135, Pub. L. 107-296, codified at 6 U.S.C. §§ 101, *et seq.*, alien detention, deportation, and removal functions were transferred from the Department of Justice to the Department of Homeland Security ("DHS") on March 1, 2003. 6 U.S.C. § 251 (2002). Within the DHS, the former Immigration and Naturalization Service ("INS") was reorganized into three bureaus serving separate functions. The Bureau of Immigration and Customs Enforcement ("BICE") is now responsible for removals and investigations. Because this case was filed prior to the reorganization, the Court will refer both to the former INS and to the BICE within this Report and Recommendation.

REPORT AND RECOMMENDATION
PAGE – 1

naturalization was arbitrary and capricious, and an unlawful refusal to exercise discretion.  Finally, petitioner alleges that the Board of Immigration Appeals ("BIA") made a legal error in summarily affirming the IJ's decision, and that the BIA failed to follow the governing regulations when making its decision.  (Dkt. #1).  Respondents argue that petitioner is an aggravated felon under INA § 101(a)(43), and therefore is not eligible for any relief from removal.  (Dkt. #21 at 1).

After carefully reviewing the entire record, I recommend that the Court DENY petitioner's habeas petition (Dkt. #1), and GRANT respondents' motion to dismiss.  (Dkt. #21).

## **BACKGROUND AND PROCEDURAL HISTORY**

Petitioner Ponciano Austria is a native and citizen of the Philippines.  (Dkt. #20 at R39).  He first entered the United States on June 28, 1979, at Honolulu, Hawaii, as an IR-2 Immigrant, child of a United States citizen.  (Dkt. #20 at R39, R104).

On February 12, 1987, petitioner was convicted in the Los Angeles County Superior Court, following a trial, for Assault with a Firearm on a Person in violation of California Penal Code § 245(a)(2), and was sentenced to four years in prison.  (Dkt. #20 at R125-128).  On October 2, 1990, he was convicted in the Municipal Court of Burbank, California, for Possession, Manufacture, or Sale of a Dangerous Weapon in violation of California Penal Code §12020, and was sentenced to 24 months probation with 30 days imprisonment, suspended.  (Dkt. #20 at L43-44).

In March 1995, petitioner moved from Los Angeles, California to Seattle, Washington.  (Dkt. #1 at 4).  He has been employed by the Applied Physics Laboratory at the University of Washington since November 1997.  (Dkt. #1 at 4).

On July 30, 2000, petitioner was stopped by Canadian immigration authorities while attempting to enter Canada from the United States at the Peace Arch Port of Entry in Blaine, Washington.  (Dkt #20 at R30).  Canadian officials denied petitioner entry to Canada based on his criminal record in the United States.  (Dkt. #20 at R30).  After being alerted by Canadian immigration authorities, the INS encountered petitioner upon his reentry into the United States.  The INS confirmed petitioner's criminal record, and issued a Warrant for Arrest of Alien and Notice of

REPORT AND RECOMMENDATION
PAGE – 2

Custody Determination, advising petitioner of his rights. (Dkt. #20 at R37, L4-5). At the same time, the INS served petitioner with a Notice to Appear, placing petitioner in removal proceedings and alleging deportability under INA § 237(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in INA § 101(a)(43)(F), based on his February 12, 1987, conviction for assault with a firearm. (Dkt. #20 at L7).

On August 17, 2000, petitioner was released on $2,500.00 bond. (Dkt. #20 at L31). On October 18, 2000, petitioner appeared, with counsel, at his immigration proceedings. Petitioner admitted his alienage but denied the February 12, 1987, conviction for assault with a firearm. The IJ continued the proceedings to obtain petitioner's conviction records from California (Dkt. #20 at R66), and for a determination of petitioner's eligibility for a section 212(c) waiver. (Dkt. #20 at R56, L220-222).

On November 30, 2000, petitioner married Elena Javillonar, a Philippines born naturalized United States citizen. (Dkt. #20 at L79-80).

On January 22, 2001, after receiving petitioner's criminal records from California, the INS filed an additional charge of Inadmissability/Deportability pursuant to INA § 237(a)(2)(C), based on his October 2, 1990, conviction for unlawful possession of a weapon. (Dkt. #20 at L51-52).

On February 14, 2001, the IJ found that petitioner had been convicted of assault with a firearm, based on the criminal records produced. The IJ then continued the case to allow the parties time to submit briefs on whether the conviction constituted an aggravated felony under the INA. (Dkt. #20 at R77).

On March 7, 2001, petitioner's spouse filed a Petition for Alien Relative (I-130), on his behalf. (Dkt. #20 at L84). On March 30, 2001, petitioner filed an Application for Naturalization with the INS (Dkt. #20 at L277), and moved the Immigration Court to terminate the removal proceedings pursuant to former 8 C.F.R. § 239.2(f), to permit petitioner to proceed on his naturalization application.

On June 7, 2001, the IJ issued a written decision, denying petitioner's motion to terminate the

REPORT AND RECOMMENDATION
PAGE – 3

removal proceedings, and finding petitioner removable as charged under INA § 237(a)(2)(A)(iii) and 237(a)(2)(C). The IJ further pretermitted petitioner's applications for discretionary waivers under INA §§ 212(c), 212(h), and 245(i), and found him ineligible for Cancellation of Removal under INA § 240(A)(a). (Dkt. #20 at 144-151).

On or about June 28, 2001, petitioner filed, through counsel, an appeal of the IJ's decision to the BIA. (Dkt. #20 at L155-57). On November 30, 2001, the INS approved the I-130 visa petition filed on petitioner's behalf. (Dkt. #20 at L202). On September 25, 2002, the BIA affirmed, without opinion, the IJ's decision, pursuant to the BIA's summary affirmance procedures under 8 C.F.R. § 3.1(a)(7). (Dkt. #20 at L322-23).

On or about May 7, 2002, the INS denied petitioner's application for naturalization. The INS concluded that petitioner lacked the requisite good moral character because of his aggravated felony convictions. The INS also determined that petitioner was ineligible for naturalization because removal proceedings were pending. (Dkt. #20 at L280-274).

On October 24, 2002, petitioner filed, through counsel, the instant habeas petition, along with a request for stay of removal. (Dkt. #1). On November 19, 2002, this Court granted petitioner's motion to stay his removal. (Dkt. #6). Because petitioner's habeas case is one of ten cases[2] filed in this District that challenge the BIA's summary affirmance procedures, this Court granted the parties' requests to hold the case in abeyance, pending the Ninth Circuit's decision on this issue. (Dkt. #11). On February 13, 2004, following the Ninth Circuit's decision in *Falcon-Carriche v. Ashcroft*, 350 F.3d 845 (9th Cir. 2003), this Court issued an Order lifting the abeyance and re-noting the case for consideration. (Dkt. #19). The briefing is now complete and the petition is ready for review.

---

[2] Case Nos. C02-1827P, C02-1917P, C02-2330L, C02-2387Z, C02-2196FDB, C03-0002P, C03-0490L, C03-0726L, C03-3143P, and C04-949FDB.

REPORT AND RECOMMENDATION
PAGE – 4

**DISCUSSION**

A. *Petitioner's First Claim*

Petitioner first claims that he is not deportable as a matter of statutory and constitutional law because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), provision requiring the deportation of aggravated felons may not be applied retroactively to his 1987 conviction. (Dkt. #39 at 4-11). Respondents argue that petitioner is barred from raising his retroactivity challenge because he failed to exhaust his administrative and judicial remedies by filing a Petition for Review with the Ninth Circuit. (Dkt. #40 at 3-4).

As a threshold matter, the Court finds that respondents' jurisdictional argument is inapplicable to this claim. While the Supreme Court has narrowed the scope of habeas review in immigration cases, district courts may review "statutory and constitutional challenges." *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *see also INS v. St. Cyr*, 533 U.S. 289, 298, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (holding that District courts retain habeas jurisdiction to review pure questions of law). In addition, the Ninth Circuit Court of Appeals has explained that district courts retain habeas jurisdiction over allegations of constitutional and statutory violations during administrative removal proceedings. *Gutierrez-Chaves v. INS*, 298 F.3d 824, 829 (9th Cir. 2002). Accordingly, petitioner's challenge falls within this Court's scope of habeas review.

The Court now turns to the merits of petitioner's claim. In 1988, the commission of an aggravated felony first became a ground for an alien's deportation with amendments to the INA under the Anti-Drug Abuse Act ("ADAA"), Pub. L. No. 100-690, 102 Stat. 4181 (1988). The ADAA added a definition of the term "aggravated felony," and provided that aliens convicted of an aggravated felony at any time after entry are subject to deportation. The ADAA, however, operated prospectively only, expressly stating that it applied to convictions entered on or after its enactment on November 18, 1988. ADAA § 7344(b). Because petitioner's 1987 conviction for assault with a firearm occurred prior to the 1988, he did not become deportable by virtue of the passage of the

REPORT AND RECOMMENDATION
PAGE – 5

ADAA.

In 1990, Congress enacted the Immigration Act of 1990 ("IMMACT"), Pub. L. No. 101-649, 104 Stat. 4978 (1990), which expanded the definition of aggravated felony. In addition, the IMMACT declared that "[a]ny alien who is convicted of an aggravated felony at any time after entry is deportable." IMMACT § 602(a)(2)(A)(iii). Section 602(d) stated that the amendments made to the removal provisions "shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991."

In 1996, Congress enacted IIRIRA. Among other things, the Act created significant changes for criminal aliens seeking relief from removal, and further broadened the aggravated felony definition. Under 8 U.S.C. § 1227(a)(2)(A)(iii), aliens convicted of "aggravated felonies" are eligible for removal. Under 8 U.S.C. § 1101(a)(43), twenty-one possible offenses are designated as "aggravated felonies." In addition, Congress explicitly stated that the new, expanded aggravated felony definitions would apply both prospectively and retroactively. IIRIRA § 321(b). IIRIRA became effective on April 1, 1997.

Petitioner argues that he is not removable as an aggravated felon under INA § 237(a)(2)(A)(iii) because his 1987 conviction predates the enactment of the ADAA. Petitioner argues that ADAA § 7344(b) specifically provided that the aggravated felony deportation ground applied *only* to convictions entered on or after its enactment on November 18, 1988. According to petitioner, neither IMMACT nor IIRIRA amended or repealed ADAA § 7344(b)'s directive that the aggravated felony ground be applied prospectively, and therefore the provision is still effective and precludes his deportability for his 1987 conviction. Petitioner concedes that IIRIRA made the "aggravated felony" definition retroactive, but insists that IIRIRA did not make the consequences that flow from that definition – i.e., deportability – retroactive. For this reason, petitioner disputes whether the retroactive definition applies to make him removable for his 1987 conviction, and argues that the retroactive application of INA § 237(a)(2)(A)(iii) violates his right to due process. (Dkt. #39 at 4-11). The government responds that the Ninth Circuit has already determined that Congress

REPORT AND RECOMMENDATION
PAGE – 6

intended the 1996 amendments to the aggravated felony definition to apply retroactively to all defined offenses, regardless of the date of conviction, and that the retrospective application is not a constitutional violation. (Dkt. #40 at 3). *Park v. INS*, 252 F.3d 1018, 1025 (9th Cir. 2001); *Aragon-Ayon v. INS*, 206 F.3d 847, 853 (9th Cir. 2000). (Dkt. #40 at 3-4). The Court agrees with respondents.

In *Aragon-Ayon*, the Ninth Circuit determined that section 321(c) of IIRIRA contains a clear and express directive from Congress that the amended definition section of "aggravated felony" should be applied to all criminal violations committed by an alien after his or her entry into the United States, regardless of whether they were committed before or after the amended definition went into effect. *Aragon-Ayon*, 206 F.3d at 853 ("Congress intended the 1996 amendments to make the aggravated felony definition apply retroactively to all defined offenses whenever committed, and to make aliens so convicted eligible for deportation notwithstanding the passage of time between the crime and the removal order."); *see also Park v. INS*, 252 F.3d 1018 (9th Cir. 2001); *Galicia v. Crawford*, 294 F. Supp. 2d 1191 (D. Oregon 2003). Section 321(c) of IIRIRA leaves no room to argue otherwise, as it clearly states that the revised definition applies to convictions entered before the enactment date. *Id.* Thus the Ninth Circuit has rejected petitioner's argument that there is a distinction between IIRIRA's definition section, which contains the retroactive provision, and IRRIRA's operational section, which mandates removal. *Id.* Because the INS initiated removal proceedings against petitioner on July 30, 2000, well after IIRIRA's enactment on September 30, 1996, his 1987 conviction is clearly encompassed by the new provisions.

Petitioner argues that *Aragon-Ayon* is inconsistent with the Supreme Court's subsequent decision in *INS v. St. Cyr*, 533 U.S. at 289. Petitioner further argues that the petitioner in *Aragon-Ayon* was convicted in 1992, after the enactment of the ADAA, and therefore the Court did not consider whether ADAA § 7344(b) precludes deportability for convictions entered before November 18, 1988. (Dkt. #39 at 9).

The District Court of Oregon, however, recently addressed this issue, finding *Aragon-Ayon*

REPORT AND RECOMMENDATION
PAGE – 7

in accord with *St.Cyr. Galicia*, 294 F. Supp. 2d at 1191. Like the petitioner in the present case, the petitioner in *Galicia* challenged the retroactive application of IIRIRA's aggravated felony provision to his 1988 pre-ADAA conviction. *Galicia*, 294 F. Supp. 2d at 1191. The court considered petitioner's argument in light of the Supreme Court's ruling in *St. Cyr* concerning the retroactive application of the IIRIRA provisions. *St. Cyr*, 533 U.S. at 314-25.

In *St. Cyr*, the Supreme Court applied the *Landgraf* analysis to determine whether Congress intended the aggravated felony definition to apply retroactively. *Id.* at 315-14 (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). The Supreme Court acknowledged that despite the dangers inherent in retroactive legislation, it is well established that Congress has the power to legislate retroactively. *Id.* at 316. "A statute may not be applied retroactively, however, absent a clear indication from Congress that it intended such a result." *Id.* The *Landgraf* Court held that "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf*, 511 at 280. If Congress has *not* done so, then the court must determine whether application of the statute "would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If application of the statute would have a retroactive effect, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*

Applying the *Landgraf* analysis to the retroactive aggravated felony definition, the *Galicia* court determined that Congress expressly prescribed the temporal reach of the statute. *Galicia*, 294 F. Supp. 2d at 1197. The court thus concluded that "the only practical, functional interpretation of Section 1227 is that it applies retroactively to petitioner's aggravated felony conviction." *Id.*

Other Circuit Courts of Appeals that have addressed this issue have reached the same conclusion. *See Seale v. INS,* 323 F.3d 150 (1st Cir. 2003)(holding that an alien who had been convicted of an aggravated felony prior to November 18, 1988 was removable under IIRIRA's

REPORT AND RECOMMENDATION
PAGE – 8

retroactive aggravated felony definition); *Kuhali v. Reno,* 266 F.3d 93 (2nd Cir. 2001)(holding that retroactive application of expanded aggravated felony definition to alien's 1980 conviction did not violate due process); *Mohammed v. Ashcroft*, 261 F.3d 1244, 1250 (11th Cir. 2001)("It is hard to imagine a clearer statement of Congressional intent to apply the expanded definition of aggravated felony to convictions . . . pre-dating IIRIRA."). There is no doubt that Congress has clearly manifested an intent to apply the amended definition of aggravated felony retroactively. Accordingly, petitioner's challenge to the retroactive application of IIRIRA's expanded definition of aggravated felony fails.[3]

### 1. *Due Process*

Relying on *U.S. v. Ubaldo-Figueroa*, 347 F.3d 718, 727 (9th Cir. 2003), petitioner finally argues that the retroactive application of the aggravated felony statute violates due process. (Dkt. # 39 at 11). To the extent that petitioner contends that the retroactive application of the aggravated felony statute lacks any rational basis, this contention must also fail. There is ample jurisprudence

---

[3] Petitioner also argues that the IJ erred in finding that he "was convicted in the Burbank Municipal Court for the possession of a firearm . . . [and that] the statute under which the respondent was convicted is necessarily a firearm offense for purposes of INA § 237(a)(2)(C)." (Dkt. #20 at L234-33.) Petitioner contends that he pled guilty to possession of a weapon, but that the weapon was not a firearm. He does not identify what the weapon was. Thus petitioner argues that his conviction was not a "firearm offense" for purposes of removal under INA § 237(a)(2)(C). (Dkt. #39 at 14).

The government responds that petitioner's failure to present this argument to the Ninth Circuit by timely filing a Petition for Review forecloses this argument. The Court agrees with respondents. This Court lacks jurisdiction to determine whether the INS met its burden of proof that petitioner had been convicted of a firearm offense under INA § 237(a)(2)(C). Because petitioner is challenging the decision that he committed a removable offense, the Ninth Circuit has jurisdiction to determine jurisdiction. *See, e.g., Flores-Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir. 2000)(holding that the Ninth Circuit Court of Appeals has jurisdiction "to determine whether a petitioner is an alien [removable] by reason of having been convicted of one of the enumerated offenses"). It also does not appear from the administrative record that petitioner raised this issue before either the IJ or the BIA. (Dkt. #20 L322, L161, L51-52, L224-203). A petitioner's failure to raise an issue on appeal to the BIA constitutes a failure to exhaust administrative remedies, which deprives this Court of jurisdiction.

REPORT AND RECOMMENDATION
PAGE – 9

establishing that statutes retroactively setting criteria for deportation do not violate the due process clause. *Galicia,* 294 F. Supp. 2d at 1197 n.10 (rejecting the *Ubaldo-Figueroa* analysis as dicta)(citing *Galavan v. Press*, 347 U.S. 522, 531, 74 S. Ct. 737, 98 L. Ed. 911 (1954); *Harisiades v. Shaughnessy*, 342 U.S. 580, 587-88, 72 S. Ct. 512, 96 L. Ed. 586 (1952); *Duldulao v. INS*, 90 F.3d 396, 399 (9th Cir. 1996); *U.S. v. Yacoubian*, 24 F.3d 1, 8 (9th Cir. 1994)). Congress may enact legislation with retroactivity as long as such application is justified by a rational basis. *Kuhali*, 288 F.3d at 111. The Second Circuit has found that "Congress has a legitimate interest in protecting society from the commission of aggravated felonies as well as the illegal trafficking, possession, and the use of dangerous weapons, and legislation that deports aliens who presently commit or who have committed those acts in the past is a rational means of furthering that interest." *Kuhali*, 266 F.3d at 111 (citing *Hamama v. INS*, 78 F.3d 233, 236 (6th Cir. 1996). Accordingly, retroactively applying the 1996 amendments to petitioner's 1987 conviction does not violate due process.

B. *Petitioner's Second Claim*

1. *INA § 212(c) Waiver*

Petitioner asserts in his second claim that the IJ erred in finding that he is not entitled to discretionary relief from deportation under the former INA § 212(c). (Dkt. #1 at 6; Dkt. #39 at 15). Petitioner bases his argument that he is entitled to relief under § 212(c) on the Supreme Court's holding in *St. Cyr.* (Dkt. #39 at 15). Respondents answer that petitioner was charged by Notice to Appear on July 30, 2000, which necessarily means that petitioner is in removal proceedings, not deportation proceedings, under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and IIRIRA amendments, which abolished INA § 212(c) waivers. Accordingly, 212(c) waivers are not available to aliens in removal proceedings. (Dkt. #21 at 8). The Court agrees with respondents.

Prior to 1996, INA § 212(c) provided for discretionary relief from deportation and exclusion. *See* INA § 212(c) (1994). The Attorney General could grant such relief if a balance of the alien's equities and adverse factors pertaining to deportation compelled him to do so. However, in 1996, Congress abolished 212(c) relief when it amended the existing immigration statutes through the

REPORT AND RECOMMENDATION
PAGE – 10

passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), followed by IIRIRA.

The IIRIRA legislation led to extensive litigation over which classes of aliens continued to be eligible for § 212(c) relief after the effective dates of the amendments. In *St. Cyr*, the alien pled guilty to a criminal offense before the effective date of IIRIRA and the repeal of § 212(c). The alien's deportation proceedings, however, were initiated after the effective date of AEDPA and IIRIRA, and St. Cyr challenged his deportation arguing that he had entered a guilty plea in reliance on the availability of a 212(c) waiver. The Supreme Court agreed, holding that petitioner whose "whose convictions were obtained through plea agreements and who, notwithstanding those convictions would have been eligible for § 212(c) relief at the time of their plea under the law then in effect," remained eligible to apply for such relief. *St. Cyr*, 533 U.S. at 326.

Unlike the alien in *St. Cyr*, petitioner never possessed "vested rights acquired under existing laws." *St. Cyr*, 533 U.S. at 321. Thus, petitioner "could not have developed the sort of settled expectations concerning § 212(c) relief that informed St. Cyr's plea bargain and that animated the *St. Cyr* decision." *United States v. Velasco-Medina*, 305 F.3d 839, 849 (9th Cir. 2002). Furthermore, in *Magana-Pizano v. INS*, 200 F.3d 603 (9th Cir. 1999), the Ninth Circuit concluded that aliens who are deportable based on a qualifying criminal conviction entered before AEDPA but after a full trial cannot establish reliance, and are therefore ineligible for § 212(c) waiver. *Id.* at 610-11. Petitioner did not plead guilty to his 1987 assault with firearm on person violation, but proceeded to trial and was found guilty by a jury. Accordingly, he is ineligible to claim relief under § 212(c). *Id.*

The Court is also not persuaded by petitioner's argument that he would have been allowed to pursue an application for a 212(c) waiver if the INS had commenced proceedings prior to IIRIRA. (Dkt. # 39 at 15). It is beyond doubt that the Attorney General can commence proceedings against an alien at any time, and the Court has no power to review that decision. 8 U.S.C. § 1252(g)("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the

REPORT AND RECOMMENDATION
PAGE – 11

decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien"); *see also Reno v. American Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)(holding that courts do not have jurisdiction to review the Attorney General's exercise of prosecutorial discretion to commence proceedings against an alien). Here, the Attorney General commenced proceedings after the enactment of IIRIRA. Accordingly, the provisions in 8 U.S.C. §1227 apply.

### 2. *Adjustment of Status under INA § 245(i)*

Petitioner also claims that the IJ erred in denying his application for adjustment of status under INA § 245(i), 8 U.S.C. § 1255(i), based on his marriage to a United States citizen. (Dkt. #39 at 16). An application for adjustment of status premised on a marriage that occurred during deportation proceedings must "'present [ ] clear and convincing evidence indicating a strong likelihood that petitioner's marriage is bona fide.'" *Malhi v. INS*, 336 F.3d 989, 993-94 (9th Cir. 2003)(quoting *In re Velarde-Pacheco*, 23 I&N Dec. 253, 256 (BIA 2002)); see also 8 C.F.R. § 204.2(a)(1)(iii)(A)-(B)(discussing petitioner's burden in overcoming the regulatory presumption that an alien entered into intra-proceeding marriage for the purpose of evading the immigration laws); 8 C.F.R. § 245.1(c)(9). An applicant must offer evidence that is probative of the motivation for marriage, not just the bare fact of getting married. To qualify, a marriage must be based on an actual and legitimate relationship rather than a subjective desire to adjust status based on marriage, and the applicant's evidence must reflect this. *Malhi*, 336 F.3d at 994. However, even if the INS determines that a petitioner demonstrated a bona fide marriage, it may exercise discretion to deny relief. *See INS v. Abudu*, 485 U.S. 94, 105, 108 S. Ct. 904, 99 L. Ed. 2d 90 (1988). It has been consistently held that an alien seeking adjustment of status has the burden of establishing that his case is meritorious or of persuading the Attorney General to exercise discretion favorably. *See, e.g., Eide-Kahayon v. INS*, 86 F.3d 147 (9th Cir. 1996).

Where as here, the IJ heard and denied the application for adjustment of status on its merits, 8 U.S.C. § 1252(a)(2)(B), as amended by IIRIRA, precludes judicial review. As a general rule,

REPORT AND RECOMMENDATION
PAGE – 12

district courts retain jurisdiction over questions of statutory or constitutional violations, even when they arise in the context of discretionary relief. *See INS v. St. Cyr*, 533 U.S. 289 (2001); *Gutierrez-Chavez*, 298 F.3d 824 (9th Cir. 2002). However, petitioner has not raised a statutory or constitutional claim. Rather, he contends that § 1255(i) mandates that the INS adjust his status because he is the beneficiary of an approved relative visa petition. The decision whether to grant an adjustment of status is committed to the INS's discretion. 8 U.S.C. § 1255(i)(2)("Upon receipt of such an application and the sum hereby required, the Attorney General *may* adjust the status of the alien . . .")(emphasis added). Accordingly, the Court will not review the denial of petitioner's application for adjustment of status.

### C. *Petitioner's Third Claim*

Petitioner asserts in his third claim that he is clearly prima facie eligible for naturalization and that the IJ erred in stating that she had "no authority" to terminate removal proceedings to allow petitioner to pursue an application for naturalization. Petitioner argues that the IJ misinterpreted the holding in *Matter of Cruz*, 15 I&N Dec. 236 (BIA 1975), by refusing to exercise her discretion to terminate removal proceedings. (Dkt. #39 at 18). Respondents argue that petitioner is unable to establish prima facie eligibility for naturalization under 8 U.S.C. § 1429, which prohibits the Attorney General from considering an application for naturalization "if there is pending against the applicant a removal proceeding . . ." (Dkt. #40 at 6). The Court agrees with respondents.

Termination of removal proceedings under 8 C.F.R. § 239.2(f) is within the discretion of the immigration judge, and it is the alien who bears the burden of establishing his prima facie eligibility for naturalization.

> An immigration judge may terminate removal proceedings to permit an alien to proceed to a final hearing on a pending application or petition for naturalization <u>when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors</u>; in every case the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

8 C.F.R. § 239.2(f)(emphasis added); see also 8 C.F.R. §316.2(b)("The applicant shall bear the

REPORT AND RECOMMENDATION
PAGE – 13

burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization . . .").

The IJ denied petitioner's motion relying on the BIA's decision in *Matter of Cruz*, 15 I & N Dec. 236 (BIA 1975). Specifically, the IJ found that under the BIA's ruling in *Cruz*, in the absence of a communication from the INS or a court declaration that petitioner was prima facie eligible for naturalization, petitioner could not establish prima facie eligibility for naturalization, and termination of proceedings was not required. (Dkt. #20 at L320-319). Thus the IJ properly determined that petitioner had not established prima facie eligibility for naturalization because there was no record evidence of either an affirmative communication by the INS or a declaration from a court that he would be eligible for naturalization, but for his pending removal proceedings.

Petitioner's suggestion that the IJ misapplied *Cruz* by refusing to terminate his removal proceedings is unavailing. As the BIA explained in *Cruz*,

> [a]lthough we adjudicate claims to citizenship and to eligibility for citizenship, if germane to a proceeding within our jurisdiction, neither we nor immigration judges have authority with respect to the naturalization of aliens. We will therefore decline to entertain the question of whether an alien is eligible for naturalization for purposes of termination . . . We hold that prima facie eligibility may be established by an affirmative communication from the Service or by a declaration of a court . . .

*Cruz*, 15 I & N Dec. at 237. Because the IJ lacked authority to decide petitioner's eligibility for naturalization, and because there was no communication from the INS or a declaration from a court that petitioner was prima facie eligible for naturalization, the IJ correctly determined that petitioner did not satisfy the requirements for termination.

D. *Petitioner's Fourth and Fifth Claims*

Petitioner next challenges the BIA's determination to issue a streamlined decision in his case. Petitioner contends that the BIA should not have used the summary affirmance procedure because the requirements for doing so were not met. Petitioner also argues that application of the streamlining procedures to his appeal violated his right to procedural due process. (Dkt. #1 at 7-8). Respondents argue that petitioner's claims do not raise exceptional legal issues and should be rejected. (Dkt. #40 at 7). For the reasons stated below, the Court finds that the BIA properly

REPORT AND RECOMMENDATION
PAGE – 14

employed its summary affirmance procedure in petitioner's case.

### 1. *Summary Affirmance Procedure*

The Department of Justice ("DOJ") initially adopted the immigration appeal summary affirmance procedure in 1999.[4] (Dkt. #16 at 3). This "streamlining" regulation, under 8 C.F.R. § 3.1(a)(7), authorizes a single BIA Member to affirm, without opinion, an IJ's decision, when certain criteria are met. *See* 8 C.F.R. § 3.1(a)(7)(ii). The Board Chairperson designated the categories of cases appropriate for the streamlining process. Initially, this process was used in very limited circumstances – the Board Chairperson made no designations the first year, and made only very narrow designations during the following 18 months. *See, e.g., Streamlining Implementation - Phase III*, S-L 99-11 (Aug. 28, 2000).

Then, in February 2002, the United States Attorney General, John Ashcroft, proposed a number of new restrictions on the BIA's review of appeals. These restriction included (1) the increased use of summary affirmance and other brief decisions by single Board Members; (2) a limitation on the BIA's *de novo* review authority; (3) a reduction in time for filing appeals briefs; and (4) a decrease in Members of the BIA from 23 Members to 11 Members. *See* 67 Fed Reg. 7309 (Feb. 19, 2002). These new restrictions were intended to reduce the amount of time allotted to each case, and to eliminate the immense backlog of pending BIA appeals. *Id.* at 7310.

In anticipation of these changes, the BIA began increasing its efforts to clear out its backlog of cases. *See* 67 Fed. Reg. at 54899-00. Part of these efforts was an enormous increase in the number of summary affirmance decisions issued. According to calculations by the DOJ, the number of cases decided each month increased by 63%. *Id.* Petitioner's cases was among those decided during that period. Additional efforts to decrease the backlog of cases included the designation of new, broad categories of cases appropriate for the summary affirmance procedure. These new

---

[4] The initial regulation was in effect until September 25, 2002. (Dkt. #16 at 3). Since then, there have been several changes, and some provisions have been recodified. However, petitioner's case was governed by the initial regulation, and all references in this R&R are made to the initial regulation, unless otherwise noted.

REPORT AND RECOMMENDATION
PAGE – 15

categories included all asylum, withholding of deportation, Convention Against Torture ("CAT"), suspension of deportation, and cancellation of removal cases. *See Use of Summary Affirmance Orders in Asylum and Cancellation Cases*, S-L 99-25 (March 15, 2002).

The DOJ issued final regulations adopting the proposed reforms on August 26, 2002, to become effective on September 25, 2002. *Procedural Reform Regulation*, 67 Fed. Reg. 54878. The new regulation expands the initial procedure by no longer limiting its use to designated categories. Instead, summary affirmance is now mandated in all cases satisfying the regulatory criteria. 67 Fed. Reg. at 54903, *codified at* 8 C.F.R. § 3.1(e)(4).

Under our current immigration regulatory scheme, both non-citizen aliens and the INS may appeal certain agency and Immigration Court decisions, including decisions made at removal proceedings. 8 C.F.R. § 3.1(b)(2); *see also* 8 C.F.R. § 3.38. The BIA is in charge of conducting the appellate review, and, pursuant to the governing regulation, must "exercise their independent judgment and discretion" in reviewing those cases. 8 C.F.R. § 3.1(a)(1).

At the time petitioner's case was reviewed, a three-member panel review was mandatory unless a case met the criteria for the streamlining procedure. A case would be appropriate for streamlining if it fell into one of the designated categories noted above, and if a Board member found:

(1) that the result reached in the decision under review was correct;
(2) that any errors in the decision under review were harmless or nonmaterial; and
(3) that (A) the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve that application of precedent to a novel fact situation; or (B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted.[5]

8 C.F.R. § 3.1(a)(7)(ii). Once the Board Member has determined that the case fits these criteria, the BIA issues the following order: "The board affirms, without opinion, the results of the decision below. The decision is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(a)(7)." 8

---

[5] The new regulation changed the standard from "so insubstantial that three-Member review is not warranted" to "not so substantial that the case warrants the issuance of a written opinion." *See* 8 C.F.R. § 3.1(e)(4)(i)(B) (current version).

REPORT AND RECOMMENDATION
PAGE – 16

C.F.R. § 3.1(a)(7)(iii). The regulation explains that an affirmance without opinion "does not necessarily imply approval of all the reasoning of" the decision below. *Id.* In addition, the regulation explicitly prohibits any reviewing Member from including his or her own explanation or reasoning in the Order. *Id.*; *see also* 64 Fed. Reg. 56, 137 (Oct. 18, 1999).

Under the summary affirmance procedure, a single member of the BIA can review and affirm the IJ's opinion, bypassing the traditionally employed three-member panel review. 8 C.F.R. § 1003.1(e). If this procedure is used, the BIA must affirm the IJ's decision without opinion, and the IJ's opinion becomes the final agency decision.

The Ninth Circuit Court of Appeals has determined that the BIA's streamlining procedures do not violate an alien's due process rights. *See Falcon Carriche v. Ashcroft,* 350 F.3d 845, 849-52 (9th Cir. 2003). Thus, petitioner's due process challenge to the BIA's streamlining of his appeal is foreclosed by *Falcon Carriche. Id.* However, in a more recent decision, the Ninth Circuit held that an alien can challenge whether the BIA has violated its own regulations in employing the procedure. *Chen v. Ashcroft*, 378 F.3d 1081, 1087-88 (9th Cir. 2004). In making that determination, the Ninth Circuit examined whether petitioner has presented an "issue on appeal [that] is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation," or whether "the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted." *Chen*, 378 F.3d at 1086 (quoting 8 C.F.R. § 1003.1(a)(7)(ii)). The *Chen* court explained, "[b]ecause the BIA's decision does not indicate which subsection of the streamlining regulation it found to authorize summary affirmance, we consider whether either subsection applies." *Id.*

In *Chen*, the petitioner raised "a novel question" that had not been previously addressed by the BIA or the Ninth Circuit; namely, whether a grant of deferred enforced departure status must be construed as a grant of parole, thereby making Chen eligible for adjustment of status under the Chinese Student Protection Act. *Chen*, 378 F.3d at 1085. The court concluded that because neither subsection permitted summary affirmance of petitioner's appeal, the BIA had erred in employing the

REPORT AND RECOMMENDATION
PAGE – 17

summary affirmance procedure, and remanded the case back to the BIA for consideration by a three-member panel. *Id.* at 1087-88.

In the present case, petitioner argues that, as in *Chen*, the issues on appeal are not squarely controlled by existing BIA or federal court precedent, and therefore, were not appropriate for summary affirmance. (Dkt. #39 at 20). Respondents argue, however, that this case is an unexceptional and straightforward application of familiar issues of defining "aggravated felony" crimes, applying retroactivity standards, and determining whether a discretionary waiver should be granted. (Dkt. #40 at 7). The Court agrees with respondents.

Petitioner's case, unlike Chen's, is squarely controlled by existing precedent and does not involve the application of such precedent to a novel factual situation. Numerous Board and Ninth Circuit cases have addressed issues involving the retroactivity of the aggravated felony provisions, § 212(c) waiver, adjustment of status, and naturalization. Furthermore, there is nothing novel or unique about petitioner's factual situation. Because the Court finds that petitioner's case is squarely controlled by existing precedent and does not involve the application of precedent to a novel fact situation, the Court does not address whether the factual or legal questions raised on appeal are so insubstantial that three-member review is not warranted. *Chen*, 378 F.3d at 1086. Accordingly, the Court finds that the BIA's decision to streamline petitioner's case was appropriate because the issues it raised were clearly controlled by existing precedent.

E. *Petitioner's Sixth Claim*

Petitioner asserts in his sixth claim that the denial of his application for adjustment of status violated his substantive due process right to live with and support his family in the United States. (Dkt. #1 at 7-8). Petitioner cites no authority in support of this claim. To the contrary, the Ninth Circuit has specifically found that the Constitution does not recognize the fundamental right of an alien to remain in this country. *See Sun v. Ashcroft*, 370 F.3d 932, 944 n.18 (9th Cir. 2004) (declining to recognize a fundamental liberty interest for adults to remain in the United States because their parents and siblings are here). "The fact that all persons, aliens and citizens alike, are

REPORT AND RECOMMENDATION
PAGE – 18

protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship." *Mathews v. Diaz*, 426 U.S. 67, 78 (1976). Moreover, finding that an alien has a fundamental right to remain in this country would entail considerable interference with Congress's substantive immigration policies. As petitioner and this Court have failed to identify a single case holding that petitioner has a substantive due process right to remain with his family in the United States, his sixth claim also fails.

## CONCLUSION

Based on the foregoing reasons, I recommend that respondents' motion to dismiss (Dkt. #21) be GRANTED, and that petitioner's habeas petition (Dkt. #1) be dismissed. A proposed Order accompanies this Report and Recommendation.

DATED this  6th  day of January, 2005.

                                         s/ Mary Alice Theiler
                                         United States Magistrate Judge